UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LUMBERMEN'S UNDERWRITING** | * | |
| **ALLIANCE as subrogee of J. GIBSON** | | |
| **McILVAIN COMPANY,** | * | |
| **1905 N.W. Corporate Boulevard** | | |
| **Boca Raton, FL  33431-7303** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | |
| | * | **Civil No:** |
| **OBRECHT REALTY SERVICES, INC.** | * | |
| **9475 Deereco Road** | | |
| **Timonium, MD  21093** | * | |
| | * | |
| **and** | * | |
| | * | |
| **STAMPER ELECTRIC, INC.** | * | |
| **1379 W. Jarrettsville Road** | | |
| **Forest Hill, MD  21050** | * | |
| | * | |
| **and** | * | |
| | * | |
| **CHIPTEC CORPORATION** | * | |
| **54 Echo Place, Unit #1** | | |
| **S. Burlington, VT  05403** | * | |
| | * | |
| **Defendants** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

## PARTIES

1.      Plaintiff herein, Lumbermen's Underwriting Alliance (hereinafter
"Lumbermen's"), is a corporation duly organized and existing under the laws of the State of
Missouri, with its principal place of business located at 1905 N.W. Corporate Boulevard, Boca
Raton, Florida, and at all times hereinafter mentioned was authorized to do business in the State
of Maryland as an insurance company.

2.     Defendant herein, Obrecht Realty Services, Inc. (hereinafter "Obrecht"), is a corporation duly organized and existing under the laws of the State of Maryland, with its principal place of business located at 9475 Deereco Road, Timonium, Maryland, and at all times relevant hereto was in the business of construction management.

3.     Defendant herein, Stamper Electric, Inc. (hereinafter "Stamper"), is a corporation duly organized and existing under the laws of the State of Maryland, with its principal place of business located at 1379 W. Jarrettsville Road, Forest Hill, Maryland, and at all times relevant hereto was in the business of electrical contracting and installation.

4.     Defendant herein, Chiptec Corporation (hereinafter "Chiptec"), is a corporation duly organized and existing under the laws of the State of Vermont, with its principal place of business located at 54 Echo Place, Unit #1, S. Burlington, Vermont, and at all times relevant hereto was in the business of manufacture, installation and service of biomass gasification products including waste reduction systems.

## JURISDICTION

5.     The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) as the fire resulting in damage occurred in this judicial district.

## FACTS

6.     At all times material hereto, Plaintiff Lumbermen's provided insurance coverage to J. Gibson McIlvain Company (hereinafter "McIlvain") with respect to McIlvain's property at 10701 Philadelphia Road, Route 7, White Marsh, Maryland, (hereinafter "the premises") where it conducted its lumber supply and millwork business.

7.      In or about March 2000, McIlvain retained Defendant Obrecht as construction manager for construction of a new boiler house at McIlvain's premises.

8.      In or about October 2000, Defendant Obrecht retained Defendant Stamper to provide all labor, material and equipment necessary for an electrical system to be installed in the new boiler house at McIlvain's premises.

9.      Sometime in 2000, Defendant Chiptec was retained to provide a wood waste management system to be installed in the new boiler house at McIlvain's premises.

10.     Chiptec designed and supplied the wood waste management system at McIlvain's premises.

11.     On or about June 10, 2007, a fire occurred at the premises, which resulted in substantial damage to the building and its contents, and caused McIlvain to incur loss of income and other substantial damages, costs and expenses.

12.     The June 10, 2007 fire was caused by the ignition of flammable vapors in a non-explosion proof light fixture installed in the saw dust pit at the boiler house at McIlvain's premises.

13.     As is set forth in detail herein, the aforesaid fire and resulting damage to McIlvain were caused by the culpable conduct of Defendants Obrecht, Stamper and Chiptec in improperly specifying, supplying and installing a non-explosion proof light fixture in the sawdust pit of a woodworking plant in violation of applicable codes, good design practice and/or the applicable plans.

14.     Pursuant to the terms and conditions of its contract of insurance, Plaintiff Lumbermen's has made payments to McIlvain for the damages suffered as a result of the fire in an amount in excess of $300,000.00 and expects to pay $750,000.00.

15.     As a result of the aforesaid payments, and pursuant to the contract of insurance and by operation of law, Plaintiff Lumbermen's is subrogated to the rights of its insured against all parties responsible for the occurrence of said damages.

## COUNT I – NEGLIGENCE
## PLAINTIFF v. OBRECHT REALTY SERVICES, INC.

16.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 15 hereof as though fully set forth.

17.     The aforesaid fire and resulting damages were caused by the negligence, carelessness and negligent omissions of Defendant Obrecht, its agents, servants and /or employees acting within the course and scope of their employment in:

     (a)    failing to have a competent supervisor on-site at all times at the property during the construction of the boiler house;

     (b)    failing to ensure that the electrical work was performed in accordance with the highest standards of quality, care and workmanship in the industry;

     (c)    failing to ensure that the electrical work was performed in compliance with the National Electric Code and/or applicable local codes;

     (d)    failing to designate the use of an explosion proof light fixture in the specifications for the pit in the boiler house;

     (e)    failing to take all reasonable precautions to prevent damage to the property as a result of the electrical work;

     (f)    permitting a safety hazardous condition to exist at the property as a result of the electrical work;

     (g)    permitting the improper use of a non-explosion proof light fixture in a Class 3, Division 2 woodworking plant;

     (h)    otherwise failing to act with due care under the circumstances.

18.     As a direct and proximate result of the foregoing, plaintiff sustained damages as aforesaid, for which defendant is liable to plaintiff.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.

## COUNT II – NEGLIGENCE
## PLAINTIFF v. STAMPER ELECTRIC, INC.

19.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 18 hereof as though fully set forth.

20.     The aforesaid fire and resulting damages were caused by the negligence, carelessness and negligent omissions of Defendant Stamper, its agents, servants and /or employees acting within the course and scope of their employment in:

(a)     specifying, supplying and installing a non-explosion proof halide light fixture in the pit of the boiler house at the subject premises, which violated nationally-recognized codes and standards;

(b)     failing to act in accordance with the National Electric Code and/or applicable local codes;

(c)     failing to warn McIlvain of the unsafe conditions created by the non-explosion proof halide light fixture on the subject premises;

(d)     failing to comply with good practice, industry standards and due care concerning the installation of explosion proof halide light fixtures in hazardous locations;

(e)     failing to properly and adequately supervise and oversee the conduct, and activities of its agents, servants, employees and/or contractors;

(f)     failing to properly inspect the boiler house at the subject premises before installing a non-explosion proof halide light fixture in the pit of the boiler house;

(g)     failing to inspect, detect and/or correct the aforesaid dangerous conditions which defendant knew or should have known existed;

(h)     improperly creating an unreasonable risk of harm to the subject premises and the property of McIlvain;

(i)     failing to take all necessary and reasonable precautions to safeguard the subject premises and the property of McIlvain against the risk of harm; and

(j)     otherwise failing to use due care under the circumstances.

21.     As a direct and proximate result of the foregoing, plaintiff sustained damages as aforesaid, for which defendant is liable to plaintiff.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.

## COUNT III – NEGLIGENCE
## PLAINTIFF v. CHIPTEC CORPORATION

22.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 21 hereof as though fully set forth.

23.     The aforesaid fire and resulting damages were caused by the negligence, carelessness and negligent omissions of Defendant Chiptech, its agents, servants and /or employees acting within the course and scope of their employment in:

      (a)     improperly advising Defendant Stamper that an explosion proof light fixture was not needed in the pit of the boiler house at the subject premises;

      (b)     failing to act in accordance with the National Electric Code which designates woodworking plants as Class 3, Division 2 locations and/or applicable local codes;

      (c)     failing to warn McIlvain of the unsafe conditions created by the non-explosion proof halide light fixture on the subject premises;

      (d)     failing to comply with good practice, industry standards and due care concerning the specification of explosion proof halide light fixtures in hazardous locations;

      (e)     failing to properly and adequately supervise and oversee the conduct, and activities of its agents, servants, employees and/or contractors;

      (f)     failing to properly inspect the boiler house at the subject premises before specifying the use of a non-explosion proof halide light fixture in the pit of the boiler house;

      (g)     failing to inspect, detect and/or correct the aforesaid dangerous conditions which defendant knew or should have known existed;

(h)     improperly creating an unreasonable risk of harm to the subject premises and the property of McIlvain;

(i)     failing to take all necessary and reasonable precautions to safeguard the subject premises and the property of McIlvain against the risk of harm; and

(j)     otherwise failing to use due care under the circumstances.

24.     As a direct and proximate result of the foregoing, plaintiff sustained damages as aforesaid, for which defendant is liable to plaintiff.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.

## COUNT IV – BREACH OF CONTRACT
## PLAINTIFF v. DEFENDANT OBRECHT REALTY SERVICES, INC.

25.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 24 hereof as though fully set forth.

26.     Pursuant to the agreement between Obrecht and McIlvain, Obrect was obligated to act as construction manager of the boiler house at McIlvain's premises and, in that capacity, would specify appropriate lighting to be used in the construction of the boiler house in accordance with all applicable codes and industry standards.

27.     Defendant Obrecht breached its contractual obligations to McIlvain in that a non-explosion proof  light fixture was installed in the pit of the boiler house in violation of applicable codes.

28.     As a direct and proximate result of Defendant Obrecht's breach of its contractual obligations to McIlvain, the fire referred to in Paragraph 10 above occurred, causing damage to McIlvain's building, equipment and contents.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.

## COUNT V – BREACH OF CONTRACT

**PLAINTIFF v. DEFENDANT STAMPER ELECTRIC, INC.**

29.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 28 hereof as though fully set forth.

30.     In agreeing to provide electrical services at the boiler house at McIlvain's premises for a fee, Defendant Stamper agreed that its work would be done in a good and workmanlike manner and in accordance with all applicable codes and industry standards.

31.     Defendant Stamper breached its contract that its electrical work would be done in a good and workmanlike manner and in accordance with all applicable codes and industry standards.

32.     As a direct and proximate result of defendant's breach of contract, plaintiff suffered damages as aforesaid.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.

## COUNT VI – BREACH OF WARRANTY
## PLAINTIFF v. DEFENDANT CHIPTEC CORPORATION

33.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 32 hereof as though fully set forth.

34.     In agreeing to install a wood waste management system at the boiler house at McIlvain's premises for a fee, Defendant Chiptec expressly or impliedly warranted that its product and work would be done in a good and workmanlike manner and in accordance with all applicable codes and industry standards.

35.     Defendant Chiptec breached its warranty that its work would be done in a good and workmanlike manner and in accordance with all applicable codes and industry standards.

36.    As a direct and proximate result of defendant's breach of its implied warranties, plaintiff suffered damages as aforesaid.

WHEREFORE, plaintiff demands judgment against defendant in an amount in excess of $75,000.00 together with interest and the costs of this action.


Respectfully submitted,


Thomas M. Wood, IV (Federal Bar No. 00365)
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
(410) 332-8523
Fax: (410) 332-8564
Email: tmw@nqgrg.com

Attorneys for Plaintiff


OF COUNSEL:
MARK T. MULLEN, ESQUIRE
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
215-665-2091

Date: June 12, 2008