Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF MARYLAND

 3   LUMBERMEN'S UNDERWRITING

 4   ALLIANCE as subrogee of

 5   J. GIBSON McILVAIN COMPANY

 6              Plaintiff                  CIVIL CASE NO.:

 7   vs.                                   1:08-CV-1529

 8   OBRECHT REALTY SERVICES, INC.

 9   and

10   STAMPER ELECTRIC, INC.

11   and

12   CHIPTEC CORPORATION

13              Defendants

14   _____/

15            The Telephonic deposition of BRADLEY NOVISKI

16   was held on Monday, January 5, 2009, commencing at 11:00

17   a.m., at the Law Offices of Neuberger, Quinn, Gielen,

18   Rubin & Gibber, P.A., One South Street, 27th Floor,

19   Baltimore, Maryland 21202, before Susan M. Wootton,

20   Notary Public.

21   REPORTED BY: Susan Wootton, RPR, CLR
```

Page 54

1   A   I do not.
2   Q   Do you have any training or background in
3   fire investigation?
4   A   Nope. I do not.
5   Q   Have you discussed with anyone at the
6   McIlvain company how the fire may have started, the
7   fire of June 10th, 2007?
8   A   Yes.
9   Q   With whom?
10  A   James Burley.
11  Q   And what, do you recall the substance of
12  those conversations?
13  A   Just opinions from James on what he thought
14  started it or how it occurred.
15  Q   What do you recall was his opinion?
16  A   I do not recall the conversation in detail.
17  Q   How about conversations with anyone else
18  regarding how the fire may have started?
19  A   I do not recall having those conversations.
20  Q   Did you provide the complete Chiptec file
21  for the McIlvain project to the adjuster for CNA?

Page 55

1   A   No.
2   Q   What did you provide him?
3   A   I provided, I do not have those documents
4   in front of me so I cannot be specific.
5   Q   Does Chiptec still have its complete file
6   with respect to the McIlvain project?
7   A   Yes.
8   Q   You sent copies to CNA and kept the
9   originals?
10  A   Yes.
11      MR. MULLEN: That's all the questions I
12  have, Mr. Noviski, for right now. I appreciate your
13  cooperation.
14      EXAMINATION BY MR. STRONG:
15  Q   Mr. Noviski, my name is Mark Strong. I
16  represent Obrecht in this lawsuit.
17      I'm going to try not to be redundant. I'm
18  just going to ask you a few questions and then we will
19  move on.
20      And forgive my naiveté about this area of
21  work, so I'll try to make the questions at least sound

Page 56

1   intelligent.
2       I understand the, I guess the system that
3   you guys are implementing, when your system is
4   assembled, does a light, is there an area or a place
5   within the boiler or with the Gasifier material
6   handling system or control system where a light is
7   installed?
8       MS. MEDEMA: Objection to form.
9       MR. STRONG: That was a terrible question.
10  I'm not off to a good start here.
11      Regarding your system, sir, the Gasifier
12  and the other components that you talked about, is
13  there a place where a light gets installed on any of
14  those four components that you talked about?
15      THE WITNESS: There are no lights installed
16  on our equipment.
17  Q   When there is discussion of this explosion
18  proof light, where is that light to be installed in
19  relationship to your system?
20  A   Chiptec is not and has not been involved in
21  the design of where and what type of lights go in what

Page 57

1   type of buildings that our equipment goes in.
2   Q   So the light, my understanding of what
3   you're saying is that light is going to go inside the
4   building and the location of the light will vary with
5   the shape and size of the building, correct?
6   A   What I'm saying is Chiptec does not get
7   involved in the specifications for where those lights
8   go in the building.
9   Q   All right. So what you're saying is a
10  light does not get installed on any of your components,
11  it gets installed in the building and Chiptec has
12  nothing to do with that?
13  A   That is correct.
14  Q   All right. Does Chiptec get involved with
15  what type of light is installed in the building?
16  A   No.
17  Q   No, all right. The first document you were
18  asked to look at, sir, was the one-page fax from Rick
19  Dunn to J. Gibson McIlvain dated November 1st, 2000.
20  Do you have that document, sir?
21  A   Which exhibit number is that?

15 (Pages 54 to 57)