IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LUMBERMEN'S UNDERWRITING ALLIANCE as subrogee of J. Gibson McIlvain Company | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-08-1529 |
| OBRECHT REALTY SERVICES, INC., STAMPER ELEECTRIC, INC., and CHIPTEC CORPORATION, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Lumbermen's Underwriting Alliance ("Plaintiff"), the property insurance carrier for J. Gibson McIlvain Company ("JGM"), filed this six-count Complaint against Defendants Obrecht Realty Services, Inc. ("Obrecht"), Stamper Electric, Inc. ("Stamper Electric"), and Chiptec Corporation ("Chiptec"). Plaintiff alleges that the fire that destroyed a building on JGM's property was the result of one or more of the following: Defendant Obrecht's negligence and breach of contract (Counts I and IV), Defendant Stamper Electric's negligence and breach of contract (Counts II and V), and Defendant Chiptec's negligence and breach of warranty (Counts III and VI). Pending before this Court is Defendant Obrecht's Motion for Summary Judgment (Paper No. 31) and Defendant Chiptec's Motion for Summary Judgment (Paper No. 32).[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, Defendant Obrecht's Motion for Summary Judgment

---

[1] Defendants Obrecht and Chiptec each move for summary judgment solely as to Plaintiff's negligence claims, Counts I and III respectively. Obrecht Mot. Summ. J. at 1; Chiptec Mem. Summ. J. at 3. Defendant Stamper Electric has not moved for summary judgment.

(Paper No. 31) is DENIED, and Defendant Chiptec's Motion for Summary Judgment (Paper No. 32) is DENIED.

## BACKGROUND

This case concerns a 2007 fire that severely damaged a boiler house at the mill and lumberyard of J. Gibson McIlvain Company, a lumber company located in White Marsh, Maryland. Plaintiff Lumbermen's Underwriting Alliance was the property insurance carrier for JGM at the time of the fire and provided insurance coverage for the resultant property damage. Plaintiff asserts that the fire would not have occurred if an explosion-proof light fixture had been installed in the sawdust pit, where the fire erupted, and contends that the failure to have such a fixture installed is the fault of one or more of the Defendants. Thus, Plaintiff maintains that one or more of the Defendants should be held liable for the damage resulting from the fire.

On or about December 28, 1999, JGM purchased a specialty boiler from Defendant Chiptec that could burn sawdust and other waste products JGM used in the cutting and milling of lumber and convert it into fuel to power the kilns at the lumberyard. Chiptec Mem. Summ. J. Ex. A. The specialty boiler equipment included a gasifier combustion system, a boiler, a material handling system and a control system. Pl.'s Opp. to Chiptec Ex. 2. This equipment required a sawdust pit, where the sawdust and wood chips that would be used to fuel the boiler system could be stored and transported.

In April of 2000, JGM hired Defendant Obrecht to be the Construction Manager for the building that was to be constructed to house this new boiler and related equipment, as well as the sawdust pit. Obrecht Mem. Summ. J. at 2. On April 5, 2000, Obrecht held its first pre-construction meeting. Pl.'s Opp. to Obrecht at 4. The minutes from this meeting indicate that the electrical work in the boiler house "will consist of convenience lighting, and emergency and exit lighting to meet [the National Electric] Code." *Id*. Ex. 5 at 1.3. The permit drawings created

by the architect for the boiler house shortly after this meeting indicate that there should be "explosion proof light fixtures in [the sawdust] pit." Pl.'s Opp. to Obrecht at 4.

Obrecht originally considered Schemm Electric Company, Inc. ("Schemm Electric") to do the electrical work in the boiler house, including the lighting in the sawdust pit. Pl.'s Opp. to Chiptec at 3. On May 2, 2000, Schemm Electric submitted a list of questions to Obrecht concerning the construction project, several of which related to the electrical control panels for the Chiptec boiler system. *Id*. Obrecht did not answer these questions itself, but instead sent these questions to Chiptec to answer. *Id*. One of the questions was: "Is the [sawdust pit] bunker or any part of this [boiler] system to be classified as a hazardous location?" Pl.'s Opp. to Chiptec Ex. 4. David Jeannotte, who was a Chiptec employee at that time, responded in writing that: "The bunker is not, nor any part of this system, [] classified as a hazardous location." Pl.'s Opp. to Chiptec Ex. 6. Schemm Electric's bid was ultimately rejected as too expensive, and Obrecht eventually hired Stamper Electric to do the electrical work inside the boiler house. Pl.'s Opp. to Obrecht at 5. Chiptec similarly told Stamper Electric that "there is NO hazardous location in this operation." Pl.'s Opp. to Chiptec Ex. 11. Stamper Electric did not install an explosion-proof light fixture in the sawdust pit inside boiler house.

On June 10, 2007, at some point after 10:30 p.m., a fire was discovered in JGM's boiler house that appeared to have started in the sawdust pit. Pl.'s Opp. to Obrecht at 2. The fire resulted in over $777,000 in damages to the boiler house, the boiler equipment, and related expenses. *Id*. The Baltimore County Fire Department spent over three hours extinguishing and overhauling the scene. Pl.'s Opp. to Obrecht Ex. 1. Lt. Wroten of the Department's Fire Investigation Division investigated the scene of the fire. Chiptec Mem. Summ. J. Ex. G at 3. Lt.

Wroten determined only that "the fire was caused by some sort of mechanical/electrical failure in the steam generating system," and saw no signs of criminal activity. *Id.*

All of the parties in this case retained experts to determine the cause of the fire. Plaintiff Lumbermen's experts concluded that "this fire originated within an enclosed pit filled with sawdust," and that "the cause of the fire was the failure to install the appropriate type of light fixture in the sawdust pit as required by the National Electric Code, specifically as it pertains to the installation of light fixtures in a hazardous location." Pl.'s Opp. Ex. 12 at 12, 14. By contrast, none of Defendants' experts were able to determine the cause of the fire. Defendant Obrecht's experts concluded that there were "multiple possible causes of this fire that cannot be ruled out" and therefore "[t]he cause of this fire is undetermined." Obrecht Mem. Summ. J. at 6. Defendant Chiptec's experts found that that fire originated in the sawdust pit, and that the heat of a light fixture igniting the sawdust was one of several possible causes, but that ultimately "the cause of the fire was inconclusive." Chiptec Mem. Summ. J. Ex. H at 8. Defendant Stamper Electric's experts also could not determine the cause of the fire, but stated that it was "unlikely" that the fire was caused by the light fixture in the sawdust storage pit. Chiptec Mem. Summ. J. Ex. I at 16.

Plaintiffs maintain that the fire would not have happened if an explosion-proof light fixture had been installed in the sawdust pit, and that one or more of the Defendants are responsible for the failure to install such a light fixture.

## **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

## ANALYSIS

Defendants Obrecht and Chiptec each move for summary judgment as to Plaintiff's negligence claims. Because the acts that allegedly caused the fire occurred in Maryland, Maryland substantive law governs this action. 28 U.S.C. § 1346(b)(1).

To establish negligence under Maryland law, the plaintiff must prove: "(1) a duty or obligation under which the defendant is to protect the plaintiff from injury; (2) breach of that duty; and (3) actual loss or injury to the plaintiff proximately resulting from the breach." *Goldhammer v. Hayes*, 2009 U.S. Dist. LEXIS 49944, at *13-14 (D. Md. June 8, 2009) (quoting *Bobo v. State*, 346 Md. 706, 697 (Md. 1997)).

### A.    Plaintiff's Negligence Claim Against Obrecht (Count I)

Obrecht argues that it did not breach the duty of care it owed to JGM since it was the "construction manager, not the installer of the light." Obrecht Mem. Summ. J. at 3, 8. Plaintiff maintains that Obrecht is responsible for the fire because it was the construction manager when the boiler building was built and "allowed its electrical trade contractor [Stamper Electric] to install a non-explosion proof light fixture in a hazardous location that led to the fire." Pl.'s Opp. to Obrecht at 1. Furthermore, Plaintiff maintains that as construction manager, it "was Obrecht's responsibility to make certain that the boiler house was constructed according to the applicable codes and plans." *Id*. at 10. Plaintiff underscores Obrecht's contract with JGM, which provides that Obrecht must "[i]nspect the [w]ork of the [t]rade [c]ontractors for defects and deficiencies in the [w]ork." *Id*. Ex. 4 ¶ 2.2.8. Obrecht points out, however, that it was "expressly excluded from the decision of what kind of light to install in the sawdust pit." Obrecht Mem. Summ. J. at 8. Obrecht supports this claim with a letter written by a Stamper employee memorializing the decision about what kind of light to use in the sawdust pit. Obrecht Mem. Summ. J. at 4; Ex. 7. Obrecht emphasizes that this letter was only sent to JGM, Stamper and Chiptec. *Id*.

Obrecht contends that even if it was found to be negligent, the 2007 fire is too remote in time from Obrecht's responsibilities as construction manager to establish its negligence as a proximate cause of JGM's injuries. "Proximate cause will only be established if there is a reasonable connection between the defendant's alleged negligence and the plaintiff's injuries." *Washington Metro. Area Transit Auth. v. Reading*, 109 Md. App. 89, 107 (Md. App. 1996). In other words, "[p]roximate cause exists where there is a complete continuance and unbroken sequence between the act complained of and the act finally resulting in the injury, so that one may be regarded by persons of ordinary judgment as the logical and probable cause of the

injury." *Vito v. Sargis & Jones, Ltd.*, 108 Md. App. 408, 428 (Md. Ct. Spec. App. 1996) (internal quotations omitted). There is no question that seven years is a prolonged period of time to elapse between a Defendant's alleged negligent conduct and an injury. However, the length of time between an act and an injury is only one factor to be considered when determining a proximate cause, and "[a] foreseeable injury may follow months, if not *years*, after a negligent act that triggers a calamitous chain of events." *Wankel v. A&B Contrs., Inc.*, 127 Md. App. 128, 166 (Md. Ct. Spec. App. 1999) (emphasis added).

The parties disagree over whether Obrecht's duty of care to JGM included a responsibility to ensure appropriate light fixtures were installed in the sawdust pit. Even if Obrecht did owe such a duty, the record is unclear as to whether Obrecht's actions could be considered a proximate cause of the fire. Furthermore, this Court is mindful that, "ordinarily, the question of whether causation is proximate . . . is a matter to be resolved by the jury." *Wankel v. A&B Contrs., Inc.*, 127 Md. App. 128, 165 (Md. Ct. Spec. App. 1999). Given the wide range of facts in dispute and the lack of clarity in the record, this Court finds that there is a genuine issue of material fact with respect to Plaintiff's negligence claim against Obrecht. Thus, this claim will proceed to trial.

      **B.**     **Plaintiff's Negligence Claim Against Chiptec (Count III)**

Chiptec similarly argues that Plaintiff cannot prove it "owed a duty of care to specify the lighting in the boiler building." Chiptec Mem. Summ. J. at 10-11. While Plaintiff admits that Chiptec had nothing to do with the selection of the light fixtures, Plaintiff seems to allege that Chiptec assumed a duty of care when it advised Stamper Electric that the "Chiptec equipment and fuel delivery system were not classified as hazardous locations." Pl.'s Response to Chiptec ¶ 3-4; Pl.'s Opp. to Chiptec at 10. This is the sole duty upon which Plaintiff rests its claim of

negligence against Chiptec. If Chiptec had advised Stamper Electric that its fuel delivery system was classified as a hazardous location and the fire had still happened, it appears Plaintiff would have no claim of negligence against Chiptec.

Plaintiff cites *Chew v. Paul D. Meyer M.D., P.A.*, 72 Md. App. 132 (Md. Ct. Spec. App. 1987) to support its contention that Chiptec assumed a duty of care, and that this implied in fact duty of care can be the basis for a negligence claim. In *Chew*, the Maryland Court of Special Appeals held that a doctor had an independent duty to timely provide an insurance form to the patient's employer. In that case, the plaintiff had surgery and gave the defendant, the doctor who performed surgery, an insurance form that Chew's employer required to document his sick leave and that would enable Chew to collect sick pay. *Id*. at 136. Although Chew repeatedly called his doctor's office and was assured the insurance form would be filled out and mailed in a timely manner, it was not. *Id*. at 137. Because Chew failed to supply his employer with timely documentation that his absence from work was due to an excusable cause, he lost his job. *Id*. The Court found that Chew could bring a cause of action for negligence against his doctor, explaining that:

> [E]ven if the doctor's initial contractual duty to provide medical and surgical treatment did not include the obligation to complete and submit the insurance form, it established a sufficiently "intimate nexus" to support a tort claim if Dr. Meyer gratuitously undertook that obligation and then performed it in such a negligent manner that economic loss to Chew resulted.

*Id.* at 142. Thus, in Maryland a tort duty may arise when an act is taken that is only an implied in fact part of the contractual relationship. *See also Champion Billiards Cafe v. Hall*, 112 Md. App. 560, 570 (Md. Ct. Spec. App. 1996).

While Chiptec may not have had a contractual duty to specify what lighting equipment should be installed in the sawdust pit, like the doctor in *Chew*, Chiptec undertook a gratuitous

obligation when it answered the electrical contractor's question about the boiler equipment. Accordingly, Chiptec owed a duty of care to make an appropriate determination regarding whether the sawdust pit should be classified as hazardous. However, a genuine issue of material fact remains as to whether Chiptec breached its duty, and if it did, whether Chiptec's actions were a proximate cause of the fire. Plaintiff argues that if Chiptec had stated that the sawdust pit was hazardous, an explosion-proof light fixture would have been installed and the fire would not have happened. Pl.'s Opp. to Chiptec at 1.

To show that Defendants' conduct is a proximate cause of Plaintiffs' injuries, a Plaintiff must demonstrate that such injuries are a foreseeable consequence of that conduct. *Wankel*, 127 Md. App. at 159. "Consequences that are possible, but that are not normal, natural or probable, are not considered to be foreseeable." *Seton v. United Gold Network*, LLC, 2008 U.S. Dist. LEXIS 35440, at *23-24 (D. Md. Apr. 30, 2008). Chiptec does not address the proximate cause issue directly, as it does not discuss whether its *actions* could constitute a proximate cause of the fire. Instead, Chiptec contends that "[t]he passage of time between the installation of the light fixture to the fire some six plus years later is too tenuous to prove that the fire loss was proximately caused by the installation of the light fixture." Chiptec Mem. Summ. J. at 10. There is a genuine issue of material fact as to whether Chiptec should have foreseen that because it told the electrical contractor that the sawdust pit was not hazardous an explosion-proof light fixture would not be installed in the sawdust pit area, and whether Chiptec should have foreseen that such a fixture could lead to a fire years later. Furthermore, the record does not indicate whether Stamper Electric would necessarily have installed an explosion-proof light fixture had Chiptec stated that the sawdust pit was hazardous.

Presuming Chiptec did owe such a duty, an issue remains as to whether Chiptec should have foreseen that its actions could have affected the likeliness of a fire erupting in the boiler house. Given the wide range of facts in dispute and the lack of clarity in the record, this Court finds that there is a genuine issue of material fact with respect to Plaintiff's negligence claim against Chiptec. Thus, this claim will proceed to trial.

Thus, Defendant Obrecht's Motion for Summary Judgment (Paper No. 31) is DENIED, and Defendant Chiptec's Motion for Summary Judgment (Paper No. 32) is DENIED.

A separate Order follows.


Dated: January 22, 2010               /s/_____
                                      Richard D. Bennett
                                      United States District Judge